```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CALLON PETROLEUM COMPANY,

                    Plaintiff,            MEMORANDUM AND ORDER
                                          06-CV-0573 (JS)(MLO)
        -against-

NATIONAL INDEMNITY COMPANY and
ERIC R. DINALLO, Superintendent of
Insurance of the State of New York,
in his capacity as Rehabilitator
of Frontier Insurance Company,

                    Defendants.
----------------------------------X
```

Appearances:
For Plaintiff:      Donald J. Cayea, Esq.
                    Jones Hirsch Connors & Bull P.C.
                    1 Battery Park Plaza
                    New York, New York 10004

For Defendants:
National Indemnity  Kevin G. Snover, Esq.
                    816 Deer Park Avenue
                    North Babylon, New York 11703

Eric R. Dinallo     William F. Costigan, Esq.
                    Dornbush Schaeffer Strongin & Venaglia, LLP
                    747 Third Ave, 11th Floor
                    New York, NY 10017

SEYBERT, District Judge:

        Pending before the Court is Plaintiff's motion to amend the Complaint by including a statutory claim for punitive damages and penalties based upon National Indemnity Company's ("Defendant") bad faith failure to make a timely payment following the submission of the bond claim, under Louisiana Law L.R.S.A. 22: 1982 and L.R.S.A. 22: 1220. For the reasons below, the Court DENIES Plaintiff's motion.

## BACKGROUND[1]

On February 8, 2006, Plaintiff commenced this action against Defendant, based upon a judgment it obtained against Frontier Insurance Company ("Frontier") on September 5, 2001 in the United States District Court, Eastern District of Louisiana in the amount of $2.7 million. ("Exhibit A", Compl. ¶ 11.) According to the reinsurance agreement between Defendant and Frontier, which was negotiated and executed in New York, Defendant has the obligation to reinsure Frontier's liabilities and payments of all amounts of "Ultimate Net Loss" due to other persons "as and when due directly on behalf" of Frontier ("Reinsurance Agreement"). (Id. ¶ 15-17.) Ultimate Net Loss is defined as sums payable by the reinsured as covered liability, including judgments, settlements, damages, claim payments, and any other covered expenses. (Id. ¶ 25.) Defendant reinsured Frontier for up to $800 million in Ultimate Net Loss. The judgment at issue was in the amount of a surety bond that Frontier issued to Wood Energy Corporation ("Wood"), that subsequently defaulted on its obligation to Plaintiff under a certain assignment of leases established in December 1997.

On April 28, 2006, Defendant filed a motion to dismiss Plaintiff's Complaint, arguing that Plaintiff could not maintain

---

[1] The Court recites only those facts that are necessary for the purposes of deciding this motion, and presumes familiarity with the other underlying facts of this case. For a more detailed discussion of the underlying facts, see the Court's March 2007 Order (Docket Entry 7).

2

the action because Defendant was not a party to the surety bond issued to Plaintiff and that Plaintiff lacked the third party beneficiary rights to enforce the terms of the reinsurance agreement. (Def.'s Mot. 6, 7.) On March 31, 2007, the Court partly dismissed Plaintiff's first cause of action to the extent such claim is premised upon successor liability. (Mar. 31, 2007 Mem. and Order 10.) The Court denied Defendant's motion to dismiss Plaintiff's second, third, and fourth cause of action, and ordered the parties to appear before Magistrate Judge Michael L. Orenstein to set a discovery schedule. (Id.)

On November 17, 2008, Plaintiff filed the first motion to amend the Complaint, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, seeking to include a statutory claim for punitive damages and penalties based upon Defendant's bad faith failure to make a timely payment following the submission of the bond claim. On December 5, 2008, the parties filed a letter application to extend the briefing schedule for the motion to amend, and the Court approved the extension in an Order dated December 12, 2008. Subsequently, Defendants never filed an opposition to Plaintiff's motion.

## DISCUSSION

I. Rule 15(a) Standard

Federal Rules of Civil Procedure 15(a) mandates that courts should grant leave to amend freely "where justice so

requires." Fed. R. Civ. P. 15(a). As a general matter, it is within the discretion of the district court to grant or deny leave to amend. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994)). However, outright refusal to grant leave without any justification for the refusal is an abuse of discretion and inconsistent with the spirit of the federal rules. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). A motion to amend should be denied if and only if there has been evidence of an undue delay, bad faith, or futility of the amendment, and perhaps most important, the resulting undue prejudice to the opposing party. Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir., 2001); State Teachers Retirement Bd. v. Fluor Corp., 654 F. 2d 843, 856 (2d Cir. 1981).

In this case, there is no evidence of Plaintiff's bad faith in seeking leave to amend; so, the Court only need focus on the factors of undue delay, futility of amendment, and prejudice to Defendant. Because the issue of futility is dispositive, however, the Court will only discuss this element.

II. Futility

Granting leave to file an amended complaint is futile where the claims therein would not survive a motion to dismiss. Dougherty v. Town of North Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002). To survive a motion to dismiss, the

complaint does not need "detailed factual allegations[,]" but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. In other words, despite the policy of granting leave freely, "leave need not be granted to permit an amendment embodying plainly defective claims." Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (quoting Valdan Sportswear v. Montgomery Ward & Co., 591 F. Supp. 1188, 1190 (S.D.N.Y. 1984)).

In the present case, Plaintiff seeks to include in its Amended Complaint a statutory claim for punitive damages and penalties under Louisiana law. Louisiana law, permits an insured or a third party, to seek punitive damages against the insurer for the insurer's failure to make a timely payment following the submission of the claim where the failure is arbitrary, capricious or without probable cause. La. Rev. Stat. Ann. 22:1892. However, as an initial matter, Plaintiff has failed to provide any evidence that Louisiana law is even applicable to the Reinsurance Agreement. Although Louisiana insurance law provides for punitive damages in certain contexts, New York insurance law contains no such provision. Moreover, as a general matter under New York law,

punitive damages are not recoverable for an ordinary breach of contract. See TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 94 (2d Cir. 2005). Because of this conflict, a choice of law analysis is necessary. Since diversity exists, we apply the choice of law rules of the forum state. White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) (citing Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001)).

In breach of contract cases, New York courts apply the "center of gravity" or "grouping of contacts" analysis in choice of law situations. Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 583 (2d Cir. 2006) (citing In re Allstate Ins. Co., 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). This "center of gravity" or "grouping of contacts" analysis allows a court to consider a "spectrum of significant contacts" including "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." Id. Of these factors, the places of contracting and performance are given the heaviest weight in this analysis. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997).

Plaintiff's Complaint is based on the Reinsurance Agreement between Frontier and NICO, who negotiated and entered into the agreement in the State of New York. There is no

6

performance to be rendered under the Reinsurance Agreement, except for any payments that NICO would make to Frontier. Since the insured, Frontier is a domestic company, it is fair to find that the place of contract performance is in New York. In addition, one of the contracting parties, Frontier, is domiciled in New York, while the other is domiciled in Nebraska. This factor also weighs in favor of applying New York law over that of Louisiana. Finally, although it does not relate to the "significant contacts" listed above, the Court also notes that the Reinsurance Agreement provides that, in the event of an arbitration, "[t]he seat of the Arbitration shall be in New York, N.Y. and the Arbitration Tribunal shall apply the laws of New York as the proper law of this Reinsurance . . . . ." (Pl.'s Mot. to Am., Ex. B.)[2] any arbitration be subject to arbitration using the law of New York, which corroborates the suggestion that both parties expect at least a substantial part of insured risk to happen in New York. On the other hand, one factor weighs in favor of applying Louisiana law: the property at issue is located in Louisiana.

In light of the factors discussed above, the Court finds that New York law is applicable to the Reinsurance Agreement. Accordingly, Plaintiff's claim for punitive damages for a breach of contract under New York law would be futile.

---

[2] The Administration Agreement, also between NICO and Frontier, similarly states that any arbitration shall apply the laws of the State of New York. (Pl.'s Mot. to Am., Ex. B.)

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to amend the Complaint.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 24, 2009
Central Islip, New York