```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
CALLON PETROLEUM CO.,

                Plaintiff,

        -against-                              MEMORANDUM AND ORDER
                                               06-CV-0573 (JS)(ARL)
NATIONAL INDEMNITY COMPANY and
ERIC R. DINALLO, Superintendent of
Insurance of the State of New York,
in his capacity as Rehabilitator
of Frontier Insurance Company,

                Defendants.
-------------------------------------X
```

Appearances:
For Plaintiff:      Donald J. Cayea, Esq.
                    Gonzalez Saggio & Harlan, L.L.P
                    292 Madison Avenue, 19th Fl.
                    New York, New York 10004

For Defendants:
National Indemnity  Kevin G. Snover, Esq.
                    816 Deer Park Avenue
                    North Babylon, New York 11703

                    Joseph G. Casaccio, Esq.*
                    100 First Stamford Pl., Suite 200
                    Stamford, CT 06902
                    *no notice of appearance

James J. Wrynn,     William F. Costigan, Esq.
as Rehabilitator    Dornbush Schaeffer Strongin & Venaglia, LLP
of Frontier         747 Third Ave, 11th Floor
                    New York, NY 10017

SEYBERT, District Judge:

  Plaintiff Callon Petroleum Company ("Plaintiff") obtained a judgment against Defendant-Intervenor Frontier Insurance Company ("Frontier") in United States District Court for the Eastern District

of Louisiana.[1] Plaintiff commenced this suit to collect on that judgment out of proceeds from Frontier's reinsurer, Defendant National Indemnity Company ("NICO" and, with Frontier, "Defendants"). Pending before the Court are Plaintiff's motion to dismiss Frontier from the case and Defendants' motion for judgment on the pleadings. For the reasons that follow, Plaintiff's motion to dismiss Frontier is DENIED. Defendants' motion for judgment on the pleadings is GRANTED. Additionally, the Court notes for the record that it DENIED Plaintiff's request to move for summary judgment before the Court rendered its decision on the pending motion for judgment on the pleadings.

## BACKGROUND

The Court presumes familiarity with the nature and posture of this litigation and only sets forth those facts that are necessary for this Memorandum and Order. For a detailed discussion of the underlying facts, see the Court's March 31, 2007 Order (the "March Order") (Docket Entry 7) and August 25, 2009 Order (the "August Order") (Docket Entry 41).

### I. Plaintiff's Rights Under the Reinsurance Agreement

In 2000, Plaintiff obtained a $2.7 million judgment against Frontier in the Eastern District of Louisiana (the "Louisiana

---

[1] Frontier is in Rehabilitation and intervenes in this action through its Rehabilitator. For ease of reference, the Court refers to both the Rehabilitator and Frontier itself as "Frontier."

Judgment"). (Compl. ¶ 12.) The Louisiana Judgment arose out of a surety bond, issued by Frontier, that required Frontier to guarantee certain obligations due Plaintiff in connection with a 1997 lease assignment. (Id. ¶ 7.) Frontier was placed into Rehabilitation by the New York State Superintendent of Insurance in 2001 and has not satisfied the Louisiana Judgment. (Id. ¶¶ 13-14.)

Plaintiff commenced this action against NICO, who was Frontier's reinsurer on the bond, (id. ¶ 10), to collect on the Louisiana Judgment out of reinsurance proceeds. The Aggregate Reinsurance Agreement ("Reinsurance Agreement") between NICO and Frontier requires NICO to "pay on behalf of [Frontier] any and all Ultimate Net Loss in relation to Covered Liabilities subject to the terms, conditions, exclusions and Aggregate Limit stated in this [Reinsurance Agreement]." (Exhibit A to Pl. Opp. to J. on Pldgs., Reinsurance Agreement, Art. 1.) The parties defined "Ultimate Net Loss" to include, among other things, judgments entered against Frontier. (See Pl. Opp. to J. on Pldgs. at 3-4.) Plaintiff is not a party to the Reinsurance Agreement.

Article 14 of the Reinsurance Agreement contains the following no-third-party-rights provision:

> "Nothing in this Reinsurance [Agreement], express or implied, is intended, or shall be construed to confer upon or give to any person, firm or corporation (other than the parties hereto and their permitted assigns or

successors) any rights or remedies under or by reason of this Reinsurance [Agreement]."

(Reinsurance Agreement, Art. 14.) Notwithstanding this clause, Plaintiff has argued repeatedly that Article 1 of the Reinsurance Agreement should be read to contain an implied "cut-through" rights provision that would permit Plaintiff to sue NICO directly to collect on the Louisiana Judgment. (See Pl. Opp. to J. on Pldgs. at 2; Pl. 9/9/09 Mot. to Reconsider ¶ 6.)

In considering NICO's motion to dismiss in 2007, the Court recognized that if Article 1 could be read to confer cut-through rights on third parties, it would conflict with Article 14's no-third-party-rights clause. (March Order at 8.) At the time, the Court could not determine that the Reinsurance Agreement was unambiguous as a matter of law, so it declined to dismiss most of Plaintiff's claims. (Id.) Instead, it dismissed just one of Plaintiff's claims--the one based on successor liability--and opined that Plaintiff's implied cut-thought rights claims would be more properly the subject of summary judgment briefing. (Id. at 8-9.)

Since then, however, the Second Circuit construed the Reinsurance Agreement in another case arising out of Frontier's insolvency. In that case, Jurupa Valley Spectrum LLC v. National Indemnity Company, 555 F.3d 87 (2d Cir. 2009), the court held that Article 1 could not reasonably be read to provide cut-through rights,

4

particularly in light of the Agreement's explicit no-third-party-rights clause. Id. at 89. The Jurupa decision prompted the present motion for judgment on the pleadings.

II. Frontier's Motion to Intervene

On June 9, 2008, Eric Dinallo, who was at the time the New York State Superintendent of Insurance,[2] moved to intervene in this matter in his capacity as Frontier's Rehabilitator. The Reinsurance Agreement's insolvency provision provides that, if Frontier becomes insolvent, NICO will pay reinsurance proceeds to Frontier's receiver on the basis of Frontier's liability. (Frontier Mot. to Intervene at 3; Reinsurance Agreement, Art. 12.) Plaintiff initially consented to Frontier's intervention but reserved the right to withdraw its consent if this Court found that the intervention deprived the Court of subject matter jurisdiction. Acting on Plaintiff's consent, the Court granted Frontier's motion to intervene on September 30, 2008. Plaintiff now opposes Frontier's intervention and has moved to dismiss it from this action.

DISCUSSION

The Court first addresses Plaintiff's motion to dismiss Frontier from this case and then considers Defendants' motion for judgment on the pleadings.

---

[2] James J. Wrynn is the current Superintendent of Insurance.

I. Plaintiff's Motion to Dismiss Frontier

The Court rejects Plaintiff's attempt to dismiss Frontier's Rehabilitator as an improper intervening party for two reasons. First, Plaintiff consented to Frontier's intervention in the parties' September 26, 2008 Stipulation. (Docket Entry 29.) Plaintiff reserved the right to withdraw its consent in one circumstance only: if this Court determined that Frontier's participation deprived the Court of subject matter jurisdiction. (Stipulation at 2-3.) This circumstance is indisputably absent here, and Plaintiff should not be permitted to escape its stipulation.

Second, the Court finds that Frontier is a proper intervening party. As is relevant here, a party seeking to intervene must "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001) (quotations omitted). This is a flexible test, and district courts generally look at all the factors together rather than focus narrowly on a single one. Long Island Trucking, Inc. v. Brooks Pharmacy, 219 F.R.D. 53, 55 (E.D.N.Y. 2003). District courts have considerable discretion in making this evaluation. Hoblock v. Albany County Bd. of Elections,

6

233 F.R.D. 95, 98 (N.D.N.Y. 2005).

Frontier satisfies all four criteria. Its application to intervene was timely, having come at a time when neither Plaintiff nor NICO would be prejudiced by its intervention. Id. (explaining that prejudice is the most important consideration in the timeliness analysis). It has an interest in the litigation that may be impaired by this suit's disposition because Plaintiff seeks to recover reinsurance proceeds that the Reinsurance Agreement assigns to Frontier's Rehabilitator. (See Reinsurance Agreement, Arts. 12, 14.) Finally, Frontier meets the minimal burden of showing that its interest may not be adequately protected in the litigation because NICO, if it can deduct any payment to Plaintiff from the total remaining reinsurance coverage available to Frontier, is potentially indifferent to whom it must pay. See Reinsurance Agreement, Art. 2 (aggregate limit); Great Atlantic & Pacific Tea Co. v. Town of East Hampton, 178 F.R.D. 39, 42 (E.D.N.Y. 1998) (proposed intervenor bears only a "minimal" burden in showing its interest is not adequately represented).

Plaintiff objects that Frontier's interest is not direct or immediate enough to justify intervention. (Pl. Mot. to Dismiss Frontier at 8.) This argument fails. The Rehabilitator has a sufficiently "direct, substantial, and legally protectable" interest to permit intervention in this case, Brennan v. City of New

7

York Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) (citations omitted), because Plaintiff is seeking to divert reinsurance proceeds that belong to Frontier or, in the case of Frontier's insolvency, its liquidator. (Reinsurance Agreement, Arts. 12, 14.) Indeed, the Rehabilitation Court recognized that the right to receive these proceeds constitutes Frontier's "personal property." (See Ex. H to the Declaration of H. Neal Conolly, July 28, 2005 Rehabilitation Court Decision/Order at 4.) Further, an award to Plaintiff might reduce the total amount of reinsurance proceeds available to Frontier or its Rehabilitator under the Reinsurance Agreement. (See Reinsurance Agreement, Art. 2 (total reinsurance limited to $800 million).)

Contrary to Plaintiff's assertion, the Rehabilitator's interest in the reinsurance proceeds is not too remote or contingent, and the cases Plaintiff that cites do not help its argument. In Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 875 (2d Cir. 1984), the Second Circuit affirmed the district court's decision not to let an insurer intervene in an upcoming products liability trial by submitting interrogatories to a jury that would help the insurer determine its liability in the event that its insured lost the case. The Second Circuit found that the insurer did not have a sufficient interest in the underlying action because its potential economic loss depended on two

8

contingencies: first, a jury verdict for the insured and second, a finding later on that the insurer was somehow not responsible for indemnifying the insured in full. Id. Similarly, in Washington Electric Cooperation, Inc. v. Massachusetts Municipal Wholesale Electric Co., the Second Circuit explained that intervention is not appropriate where the proposed intervenor's interest "is contingent upon the occurrence of a sequence of events." 922 F.2d 92, 97 (2d Cir. 1990) (emphasis added). The Second Circuit affirmed the district court's order denying intervention, noting that the proposed intervenor's interest was based on a "double contingency." Id. As was explained above, however, the Plaintiff in this case seeks to divert insurance proceeds that properly belong to the Rehabilitator; the Rehabilitator's interest in this case thus depends on one contingency--a judgment in Plaintiff's favor--not a "double contingency" or a "sequence of events."

II. Defendants' Motion for Judgment on the Pleadings

By its March Order, the Court dismissed Plaintiff's successor liability claim. (March Order at 10.) Plaintiff's remaining three claims are for the breach of the Reinsurance Agreement and its related endorsements. (March Order at 3; Compl. ¶¶ 23-44.) For the reasons set forth below, Defendants are entitled to judgment on the pleadings on Plaintiff's remaining claims.

A. <u>Standard of Review under Rule 12(c)</u>

Rule 12(c) of the Federal Rules of Civil Procedure allows for either party to move for judgment on the pleadings after the pleadings are closed "but early enough not to delay trial." FED. R. CIV. P. 12(c). This is similar to a Rule 12(b)(6) motion to dismiss for failure to state a claim, except that a Rule 12(b)(6) motion comes before the close of pleadings. See FED. R. CIV. P. 12(b)(6). In either case, the Court applies the same standard. <u>Irish Lesbian & Gay Org. v. Guiliani</u>, 143 F.3d 638, 644 (2d Cir. 1998).

For both 12(b)(6) and 12(c) motions, the district court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. <u>Id.</u> The factual allegations contained in the complaint must satisfy a flexible plausibility standard, which obliges a pleader to amplify a claim with enough factual allegations to render the claim plausible. <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In other words, plaintiff's complaint must raise a right to relief above the speculative level. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 1965 (2007). For the purpose of Rules 12(c) and 12(b), a complaint must include any written instrument attached to it, or any statements or documents incorporated in it by reference, as well as any document on which the complaint relies heavily. <u>Chambers v. Time Warner</u>,

10

Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

B. Plaintiff's Suit Cannot Survive Jurupa

Plaintiff's remaining claims cannot survive the Second Circuit's decision in Jurupa that the Reinsurance Agreement does not contain a "cut-through" rights provision. The court explained,

> The language of the present reinsurance, while it provides that the reinsurer "shall pay all amounts due Insured," does not specify to whom the payments will be made. In addition, Article 14 of the Reinsurance Agreement explicitly provides that no one other than the reinsured shall have any rights or remedies against the reinsurer. The Reinsurance Agreement cannot reasonably be read to provide a "cut through."

Jurupa, 555 F.3d at 89. Accordingly, Plaintiff has no contractual privity with which to enforce the Reinsurance Agreement directly against NICO.

Plaintiff attempts to distinguish its claims from thos of the plaintiff in Jurupa, but the Second Circuit's analysis leaves no room for a different outcome. Plaintiff argues that its claims, unlike the Jurupa plaintiffs, are based on a judgment it obtained against Frontier, and that judgments are part of a "significantly different class of liabilities than the surety bond relied upon by the Jurupa plaintiff." (Pl. Opp. to J. on Pldgs. at 8-9.) Judgments, unlike surety bonds, constitute an "Ultimate Net Loss" under the Reinsurance Agreement, not a mere "Covered Liability." In Plaintiff's view, this distinction allows the Court to depart from

11

the conclusion the Second Circuit reached in Jurupa. (Id. at 9.) Plaintiff, however, is unable to support this contention either with text from the Reinsurance Agreement or with case law. (See id.)

Plaintiff also argues that the terms of the Reinsurance Agreement "remain ambiguous" with respect to the requirement that NICO make payments of the amount of an Ultimate Net Loss "on behalf of" Frontier. (Id. at 9.) This issue, too, has been conclusively decided by the Second Circuit. In Jurupa, the court acknowledged that Article 1 does not specify to whom payments must be made. Jurupa, 555 F.3d at 89. Read with Article 14's no-third-party-rights provision, however, the court concluded that Article 1 does not provide third parties with cut-through rights. Id.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant-Intervenor Frontier from the case is DENIED. Defendants' motion for judgment on the pleadings is GRANTED. Additionally, this Order serves to memorialize the Court's decision at the December 21, 2010 pre-motion conference (of which there is no stenographic record) denying Plaintiff's request to move for summary judgment before the Court issued a ruling on the pending motion for judgment on the pleadings.

The Clerk of the Court is directed update the docket to reflect James J. Wrynn as the New York State Superintendent of

12

Insurance, replacing Eric Dinallo. The Clerk of the Court is further directed to terminate all outstanding motions and mark this case CLOSED.

SO ORDERED.

Joanna Seybert, U.S.D.J.

Dated: December 23, 2010
Central Islip, New York